May it please the court, my name is Dan Siegel and I represent the appellant Robert Ward. With the permission of the court, I request three minutes for rebuttal. That request will be granted. There are three reasons why this particular gun case cannot be prosecuted in federal court. First, state statute means what it says. Second, the federal statute means what it says. And third, if there's an ambiguity, the rule of lenity means what it says as well. Turning to the first point, the state of Delaware has a statute that says that when a prisoner gets out of jail, he gets back his, quote, civil rights, end quote. That doesn't define the phrase civil rights. But that's a parole statute. It is. Parole was abolished in 1989. Almost entirely a parole statute with one non-parole provision. Yes, but that's inapplicable here. The. Well, I mean, you know, he was sentenced after after parole was abolished. The only the only. Well, the answer, and we've discussed it in the briefs, is that the state of Delaware didn't repeal the statute. They have a statutory construction rule against repeal by implication. And the fact is that when they repeal the statute, because as I understand it, those people who were convicted before 1989 could still be paroled. That's true. So you had to keep the statute on the books. Well, but the state did when they passed the new statute, as they said, no sentence imposed pursuant to the provisions of the truth. The Sentencing Act of 1989 shall be subject to parole under the provisions of this subject. Fine. We're not using any of the old parole rules. Now we've got a guy who's subject to a non-parole rule, which is getting civil rights back after you get finish a term of imprisonment without any parole. So the question then becomes, if you accept that premise, the government doesn't, but we've made arguments to that point in the brief. If you accept that premise, what does it mean when you say you're restoring civil rights? Does it mean that the state of Delaware was giving prisoners back their rights? Let's assume that you're right, that that little provision continues to carry forward even for those sentenced under the Truth in Sentencing Act. Yes, you're right. Where does that take you? Well, then you have to ask, what do they mean by civil rights? Were they giving back your right to have a nice bowl of spaghetti and meatballs? Palatable food, palatable food, palatable food. Right. The pasta at the prison is mushy. And you got that back. You get your right back to have the pasta al dente. And when your girlfriend comes to visit you at the prison lockup and they in the room, they don't let you have that much contact. You got your right back to have more contact with your girlfriend. No, no, no. Excuse me? With your wife. With your wife. Excuse me. You're right. How do you equate? How do you say commitment is relevant? Really, it's conviction under the Delaware statute that robs you of your rights. Not your commitment. It's your conviction. Our argument is that both of the statutes are saying the same thing in different ways. If that distinction was correct, then the government would be limited to the argument that they've provided. Which is they're talking about giving back your right to food and conjugal relations and the like. And that would violate a Delaware rule of canon against superfluousness. Superfluity. Superfluity. You said that pretty well. Thank you, Your Honor. So why would Delaware then amend its constitution to provide for the restoration of voting rights after the completion of each sentence if this was a catch-all provision that governed? Well, the state of Delaware... I was born there. Are you going to say it does strange things? No, Your Honor. State of Delaware is a reasonable place. No, what... If you pass... If you have a statute... I mean, look, we're assuming... We assume that my clients are aware of the law and we assume that legislators are aware of the law also. But assuming that the legislators who pass the constitutional amendment were aware of this old provision in the parole law about civil rights restoration after serving a term of imprisonment, they would know that they had a constitutional provision which takes precedence over the statute. And that if they want to make sure that people get their rights back, they have to amend the constitution. Look, we don't know from the record from the statute how the state of Delaware defines civil rights. What we do know is they have a jury statute that says you get back your jury rights when you get your civil rights back. And they have another statute that says that when you get out of jail, you get your civil rights back. So whatever they meant by civil rights... But they have a statute that says that you lose your right to serve on a jury when you get convicted. Yes, they do. You do lose your right to serve on a jury when they get convicted. And we have a case that says civil rights means the return of jury service. Yes. Okay. Doesn't this stand to reason that the only way you can be successful here to get your federal gun law rights back and avoid prosecution... In federal court. ...in federal court is that you need to get a pardon? No, Your Honor. Because they didn't repeal this provision about restoration of rights. I mean, this is part of a national model law that... That's only if we agree with you. That's only if you agree with me. Look, if you don't agree on that point... It's a short argument. And Delaware doesn't agree with that. We know that the Delaware Attorney General, in an unofficial opinion to a federal agent, took the position that the government has advocated, which is they're talking about the right to get back your right to eat the foods that you want and to associate with the persons that you want. But we have argued, and I think it's a correct argument, you'll have to make the decision that the state of Delaware has a rule against superfluousness and that they have no reason to give back rights expressly that the people get back anyway. Has your argument been made in other cases? There are no other cases that discuss this argument. So we would be revolutionizing restoration of rights if we were to so hold, would we not? No, no, Your Honor. You wouldn't? I don't see it as a revolution. I see it as a strict construction of the terms of the statute. There's a statute that says you get your civil rights back after you get out of prison. There's another state statute that says you get your jury rights back when you get your civil rights back. So at least for this narrow purpose, you get the civil right back to serve in a jury. Look, what makes this case unusual is the nature of Mr. Ward's prior conviction for recidivist drunk driving. I don't want to minimize recidivist drunk driving. It's serious. But the government made a concession that recidivist drunk driving is not an infamous crime. So Mr. Ward would get back his right to run for public office in Delaware, and that's one of the three rights you have to get back. I can't be sure, and I rather doubt, that the government would make the same concession in other cases involving more serious defendants with more serious prior records. So while we'll fight for everybody, this case might be something of an outlier. But the second question I wanted to get to, Your Honor, is the federal statute. I think the key word in the federal statute is a simple word. It's the word such. And if the word such has its normal and customary meaning, then it means you look to that particular restoration of rights in that particular case, and you ask whether it gives an express warning about possessing firearms. And if the word such has some other meaning, we really need to have a discussion of what that other meaning might be. Turning to the third and final point that I wanted to cover, let's say that you go through the words of the federal statute and the legislative history, and you can only guess at what Congress meant by their use of the word such. Well, if it came to that, then the rule of lenity would favor the defendant's position. But I don't think that it does come to that, because the Congress that passed this statute required that there be an express notice of the prohibition on firearms, and they require that it appear in such restoration of rights. So those are the three points we wanted to discuss, Your Honor. The fact that the Delaware statute does have a provision that hasn't been repealed,  that the federal statute, the word such is the key word, and that if there's an ambiguity, if you have to guess at what the word such means, the rule of lenity would favor the defense. You haven't made a constitutional claim here under the Second Amendment, have you? No, I have not, Your Honor. Okay. If we were to endorse your view of Section 4347, more harshly punished defendants would benefit to the disadvantage of those who were never sent to jail. I understand your argument. Could the legislature have intended that result? I rather doubt that they would have intended that result. If I were representing somebody who got, say, home confinement rather than going to prison. But he would have to go the pardon route. If there was somebody who got a lesser sentence than imprisonment, and I were representing him, I would argue that the greater includes the lesser, and that if you get back your civil rights when you get out of jail, then you also get back your civil rights when you get out of home confinement or halfway house. That's not what the statute says. You're trying to read the statute and read its words, but you're ignoring its words. It says a person who has served the person's term of imprisonment. That's true. But there is a canon of construction which I would offer on behalf if I were representing somebody like that. If you get out of jail, if you get back your rights after serving your term of imprisonment, then you should get your rights back after serving some lesser penalty. Of course, I don't represent that person here. We're talking about two kinds of rights. We're talking about core rights, effectively, and we're talking about palatable food. We're getting back to the al dente pasta. Ah. Okay, Mr. Siegel, we'll have you back on rebuttal. Thank you very much, Your Honor. Ms. Wolfe. Thank you, Your Honors. May it please the Court. Leslie Wolfe on behalf of the United States. For two separate reasons, defendant's felony DUI conviction is a valid predicate conviction under 18 U.S.C. 921-A20, and therefore defendant remains a person prohibited from possessing a firearm under federal law. First, defendant's civil right to serve on a jury has not been restored by and through a single sentence found within Delaware's comprehensive parole statute. Second, even assuming arguendo that right was restored, Delaware law expressly provides that ward may not possess a firearm. We've discussed the sentence on which defendant relies, which reads, such discharge and the discharge of a person who has served the person's term of imprisonment shall have the effect of restoring all civil rights lost by operation of law upon commitment. That sentence is found within a subprovision of Section 4347 of Chapter 11 of the Delaware Code, a section entitled appropriately Parole, Authority, and Procedure. That provision of law contains 14 subsections. Do you acknowledge that that law is still on the books? That is correct, Your Honor. As was discussed during Mr. Siegel's argument, there are prisoners currently incarcerated in Delaware who were sentenced prior to the enactment of the Truth in Sentencing Act and are still eligible under the parole provisions in the Delaware statute. I assume that when the Truth in Sentencing Law was passed in Delaware that there was not a similar provision enacted in that Truth in Sentencing Law. None that I'm aware of, Your Honor. Okay, so why is it so wrong for Mr. Siegel on behalf of Mr. Ward to reach to that statute and say, It's what the Delaware legislature said. Mr. Ward's entitled to the protections of that section. Why is that so wrong? Because it reads out what the sentence actually says and what the sentence actually means. It reads what? It reads out a certain language of the sentence. Mr. Siegel relied in his briefs on multiple canons of statutory interpretation. And while he spoke of plain meaning here today, his interpretation essentially casts that aside. The statute talks about civil rights lost by operation of law upon commitment. And here, civil right was lost not by commitment, not by virtue of a defendant being sentenced to a term of incarceration, but by his conviction under 10 Delaware Code, Section 4509. This statute says that once he's released, civil rights are restored. Okay, now what rights under Delaware law are lost by operation of law upon commitment? I've never seen a listing of those rights anywhere. And, Your Honor, there doesn't seem to be a specific list, certainly not within the Delaware Code of those rights. But this Court has recognized for a long time a distinction. I mean, this prison business could get more competitive, and some prisoners may say we're going to serve really palatable food here. And people are going to want to come to our prison. I think that the palatable food example is one among many. I think that it's more important to think about it and actually harmonizes the reading of the statute when you read it as a parole provision because it is part of parole authority and procedure. And parole is something of a liminal status for defendants. You're not fully released, yet you're not fully incarcerated. So the Delaware Code provision says, in fact, when released on parole, you may remain in the custody of the Department of Corrections, but you are subject to the orders of the Board of Parole. And that means there are limitations and increased limitations. The Supreme Court in Jones v. Cunningham talked about this status primarily in a habeas context. Many of these cases as to what it means to be in custody arise in the habeas corpus context. And I think in Jones v. Cunningham there was a parolee who had been released, and what had happened in those circumstances was the parole board governed where he was permitted to live, whether or not he was permitted to travel, where he worked, whether or not he could drive a car. And those are the kinds of limitations that remain in place while you are on parole that are not imposed. Are they really civil rights, though? Those are the rights lost upon commitment. Civil rights. The statute uses the word civil rights. Your Honor, I think that they are civil rights because people's freedom of association, to be able to come and go as you please, is a civil right, versus what this Court described within the Avado decision as those collateral consequences of a conviction that persists after a defendant has been released from custody. And it is those physical rights. Those are the core civil rights. They use that word. The core civil rights. You did say collateral. I know what you're saying, and that's exactly what he said. But it diminishes, I think. That word seems to diminish the importance of these rights. And, Your Honor, I agree. There is something of a schism between understanding them as the core civil rights to serve on a jury, the right to vote, the right to hold public office. But they are considered collateral consequences of a conviction, and they are unrelated to confinement. So that distinction is an important one, and it is one that we know is what the statute intended, because that is what it says. Delaware very clearly has an understanding of how to restore civil rights fully and not qualify them in any way. Comparing it to and looking at Delaware's pardon statute, which I believe is 11 Delaware Code Section 4354, that pardon statute says an unqualified pardon has the effect of restoring all civil rights and then goes on to specifically enumerate those core civil rights that Your Honor has referred to and, in addition to those three rights, the right to possess a firearm. So the Delaware legislature very clearly drew a distinction in its pardon statute and its pardon jurisprudence, whereas the defendant here is relying on something that is a limited, a limited class of civil rights, those lost upon commitment. I think the court properly articulated the absurd results that would arise if defendant's interpretation of the statute is accepted, that by connecting the restoration of the core civil rights to serving a term of incarceration, it would have a perverse consequence, essentially rendering more serious offenders eligible for civil rights restoration immediately upon release from prison, making them eligible. What would trump? I mean, when 4347 was passed, the Delaware Constitution said a person convicted of a felony couldn't vote. So what trumps what? The Constitution or this statute? The Constitution, Your Honor, and I'm not sure. The Delaware Constitution has been amended multiple times.  Article 5, Section 2 said a person convicted of a felony can't vote, correct? At one point in time, yes, Your Honor. That's when 4347 was enacted, that's what it said? Yes, Your Honor. So are you saying the Constitution trumps the statute, or would the statute then trump the Constitution? The Constitution would trump the statute, and, again, under the appropriate reading, there's no disconnect between those two provisions. So there's no need to elevate the Constitution above the statute. But if we were to read it to apply as Mr. Siegel would like, then we would assume that the legislature was passing a law that was inconsistent with the Constitution, correct? That's correct, Your Honor, which, again, suggests that is not what the legislature intended in passing the provision. And more so, not only has that provision existed for some period of time, it's been amended. As recently as 2013, the Delaware legislature removed what, at that point, had been a five-year waiting period for restoration of the civil right to vote, and said now when you've served your sentence, completed whatever it is, you get your right to vote back. But there is no analogous provision associated with the return of the right to serve on a jury absent a pardon. And while that may seem unusual, it is not unique to Delaware that, for whatever reason, has not been elevated to the same status. But it is the government's understanding that in both the sister districts in the circuit, that in Pennsylvania and New Jersey as well, the right to serve on a jury is restored only by pardon. And if we were to read the statute the way Mr. Siegel wants, that would be totally inconsistent. That is correct. That's 2013. Is Delaware, are you familiar with the Delaware pardon process? Not intricately, but briefly, Your Honor. I mean, are pardons granted with any frequency in Delaware? They're not entirely infrequent and uncommon. So there is a process, I believe, and I will admit that I recently looked at the statistics, and I'm just not recalling them at the moment. But they are, and the statistics are published regularly and consistently. And again, it being a small state, I think sometimes the absolute numbers. But it is a process that is available. It is not a rare or unique process. But it is an affirmative process that needs to be undertaken that requires action, which again speaks to the absurdity of the result that arises under defendants' view of the statute. Should we certify this issue to the Delaware courts to decide what their law is? Your Honor, I don't believe that's necessary because I think that the Delaware court, well, not the courts, but the Delaware Attorney General has offered an opinion. There is nothing inconsistent. And in fact, the way in which Delaware has interpreted the statute in enforcing the firearms ban under Delaware Code, Title 11, Section 1448, suggests that they don't view it as a full restoration of civil rights because under Delaware law, defendants cannot, convicted felons cannot possess firearms. And in fact, that opinion says we're not going to speak for the federal courts. Specifically, two points. There are two different opinions where they say they're not going to speak. It's the latter one relating to the part of the statute where they say we're not going to speak for the federal courts, where they bow out of that. But in the earlier opinion in which this very issue, this precise issue was raised and inquired on the federal level by the Bureau of Alcohol, Tobacco, and Firearms. Your Honor, 1992 informal opinion. What is the difference between an informal and a formal opinion? Under Delaware statute, there is a provision that provides, and Mr. Siegel cites this in his reply brief, that articulates when formal opinions may issue from the Attorney General. They don't call them formal opinions, they don't put them in the statute itself, but it advises essentially state authorities on provisions of state law. Yes. And that was my guess as to why you carefully used the word an informal opinion here in the brief because this was, you know, directed to a federal official and never published in the Delaware Attorney General, whatever it is they publish it in. So it's really very informal. It doesn't have a lot of weight to it. It is, Your Honor, but in the sense... In fact, even your friend says it's entitled only to respectful consideration. Of course, then he says why it shouldn't be accorded respect. But do you believe it should be accorded deference? I don't believe that deference is the appropriate standard for it, but in a vacuum, absent that statement, there is nothing else directly on point. If there were a conflicting formal Attorney General opinion or decision of a Delaware court, but in the context in which it arises, it is essentially on all fours with the issue and it addresses it as the controlling or enforcing authority under state law. So insofar as it is a reasonable interpretation, it should be given some consideration, and here it really is the only interpretation that makes sense. Again, as you look at the results that would arise to the contrary, you look at the plain language of the statute, there is no reason to believe it. In fact, defendant points to nothing within the legislative history itself to suggest that Delaware intended anything else. Delaware on its books has an equivalent essentially felon in possession statute. It's a statute that's regularly utilized and enforced by the Delaware courts. It has a pardon statute that provides for the unequivocal restoration of all civil rights, including the core civil rights that are necessary under Washington, the restoration of civil rights under federal law in 921-820. So there is nothing suggesting that any other reading of the statute is appropriate, if you even make it that far, because again, the parole provisions have been repealed insofar. They have not been repealed, but they do not apply. By their very terms, two defendants under Section 43, the subsequent provision that states it's 4354, no sentence imposed after 1989 shall be subject to these provisions, and 4347 is a parole provision of that subchapter. In fact, it is entitled Parole, Authority, and Procedure. For that reason, the government submits that the decision of the district court should be affirmed. Mr. Wolf, I think we understand your position, and thank you. Thank you, Your Honors. Mr. Siegel, you reserve three minutes. Thank you, Your Honor. I'd like to begin by responding to Judge Rendell's point regarding inconsistency within the Delaware statutes, then respond to the government's point regarding the intent of the Delaware legislature. When the Delaware legislature passed this overarching sentencing reform statute back in the 1960s that included this parole subsection, which included the restoration of civil rights, the legislative history of it, that is, the commentary to the Model Act, reflects, consistent with the times, a liberal approach to the restoration of civil rights. In fact, when Justices Marshall and Brennan on the Supreme Court were trying to make efforts to get restoration of jury rights back as part of federal laws, federal constitutional law, they weren't successful with it. But they made the point that, look, there's this model law, and they take this liberal approach that would give people back their right to vote. So to the extent that Delaware has a statute that says we look to the commentary, to the model laws that we use to enact statutes, there is a basis for saying that the Delaware, the state of Delaware, had the intent to adopt that liberal interpretation of civil rights. Now, what about the conflict? That's because two justices read Delaware law that way? No, that's because the commentary that we cited in the brief speaks about a liberal restoration of civil rights. But I want to get to your point, which is a well-taken point regarding inconsistency. On one hand, they've got a constitutional provision that says you can't vote. And then on another hand, the Delaware legislature in the 1960s passes this model act, which has this small provision, which says you get back all of your civil rights when you get out of jail. Certainly a constitution takes precedence over a statute, so the constitution would win. But does that mean that when you look at it, you say, well, if they passed that statute at the time they had this constitutional provision, they must not have been talking about the civil rights that we're talking about, voting and serving on juries and the like. They were talking about something else, perhaps the rights that the government is referring to. And the answer is that's an acceptable approach if it's a reasonable argument. That is, if there's a reasonable basis to say, you know, the Delaware legislature expressly passed a restoration of civil rights because they wanted people to get back their right to eat the foods that they like and have relationships, but they weren't talking about voting. They weren't talking about serving on a jury. They weren't talking about running for public office. Well, the commentary to the statute says that they were talking about precisely those sorts of rights. So what this case, what I'm suggesting is that while there is an inconsistency between restoration of the right, the civil right to vote and the constitutional amendment, they passed two provisions that are in a part inconsistent as long as the Delaware constitution. But you're citing lots of canons. And wouldn't one of the canons be we should not read a statute to be inconsistent with the constitution? We should read it so that there is consistency? True. And that canon would require the court, would lead the court to say that. So say commitment is commitment, not conviction. It would lead the court to say that I believe that you don't, to the extent that the civil rights restoration restores the right to voting, it is overcome by the constitutional provision. If you would say, no, it overcomes any related civil rights, then you would essentially be taking the al dente pasta approach, which is an unreasonable approach because it would render the statute superfluous. The one final point I wanted to make, we talk about, the government has spoken about the intent of the Delaware legislature. We can only discern intent. The best way to discern intent is by the words of the statute. They passed a statute. It says we restore all civil rights. And I submit that under the commentary to this model statute, the civil rights they were talking about were the civil rights we normally talk about. Thank you. Mr. Siegel, we thank you very much. We thank both counsel for their arguments in this case, and we'll take the matter under advisement.